The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and his Honorable Court. Be seated please. We have four argued cases this morning. The first of these is number 15-1372, TLI Communications v. AV Automotive. Mr. Whitman. You may start. May it please the Court. All of the 295 patent claims satisfy the Alice Mayo two-step test for patent eligibility under Section 101. At Step 1, every independent claim recites a communication system that requires a telephone having an integrated image recording device and a component for allocating classification information to those digital images. Your client doesn't claim to have invented the camera phone, right? That's not what the claim is directed to. I don't think that that – the claim is not directed to a camera phone per se, but it is directed to a phone with an integrated camera having memory to store images and having a way to classify information to those images. Would a digital camera attached to a phone qualify as an integrated phone within the meaning of the claim? I think perhaps, but it would still not – there's no evidence that any such device existed or had classification information. Well, except that you just said I thought that your client didn't claim to have invented that. He – well, we back up to 1996 when the patent was filed and the original signing – But your client does not claim to have invented the camera phone. No, I don't think so. But technically, the first camera phone hit the market in 2000, four years after this patent was filed. But that's – I mean, your blue brief does a really good job of trying to convince us that this is patentable because the camera phone is so novel. But your claims and your specification don't claim a camera phone or even one with data storage. Your claims are about a system, an apparatus for taking, sending, and storing, and classifying. Isn't that right? I think the claims are more narrow than that. And in fact, about half of the limitations of every independent claim is directed to the telephone features. And the telephone features do require an integrated camera unit, but that's not all. They do require a way to classify – I'm sorry, when you start talking about the telephone and the telephone features, it sounds to me like you're saying you invented the telephone camera. But I don't see anywhere in this patent that says you did. And if you're trying to say it did, I don't see how it would remotely even be enabled. There's no claim directed to a simple camera phone. So it's a combination of a camera phone with the way to integrate, to bring in classification information, to classify those images. Nothing like that was conventionally – So the camera phone doesn't add any patentable weight. It works in combination. I don't think that it could – I'm not sure that it could simply be thrown in the curb. It's a system that includes all of these elements that work together along with the server on the back end. So the server is in every independent claim as well. So you need a phone that communicates with the server in such a way – I know, but I struggle with this too because you have all – it's very hard for me when you read your claims with all these very concrete, tangible things to say that it's directed to an abstract idea, except for the way that Alice has told us to look at it and the way we've looked at it in other cases, which is to look for is at the heart of this an abstract idea, and is there anything that adds tangible weight? And a server, which I think is a computer, right? I mean at some point it's a computer. We've never found since Alice to be a patentable weight. Okay. There's two parts to this – to answer this question. The first is that Alice does say in step two, is there a technology improvement? Is this a technical patent? Okay, so what's the improvement? Well, there's at least a few here. The first was discussed during the original prosecution when Prior Art came up with a digital camera. And the patent he was explaining back then in 1996 that memory was very expensive and very limited. Even the digital cameras at the time could only take a couple images. And that was a problem that this invention solved. This invention – How did it solve that? It solved that by allowing that these images that you capture on the camera phone can now be offloaded to the server. So the memory limitation was obviated by the integrated camera and the classification information. So a user could input classification information, take the picture, and send it to a server, and then go get it later. Storing the images not in the phone itself. Not in the phone itself. But in a separate server. This was discussed during the original prosecution, back and forth between the examiner, and it actually distinguished that reference, which was a digital camera. So what else was invented here? Another inventive step is if we look at dependent claims 10 and 11, and this does bring the server back in. So it's not just an ordinary server. Back in 1996, cellular transmissions were very slow and very costly. So actually transmitting a digital image from a phone would take time and cost money. Claims 10 and 11 describe a system where the server receives these images, analyzes the images, and says, okay, you just sent one that's very big, it took a long time, it cost a lot of money. The server communicates back to the telephone and says, please send me an image of lesser resolution so that we can save time and expense. And again, that was not a conventional feature. Okay, what else is there? Where does it say in 10 and 11 that it communicates back and says, send a smaller one? I mean, 10 includes an image analysis unit for determining. We're talking about the 295 pattern? Yes. It talks about determining quality. Yes, and in the spec, the quality. And then it says controlling unit for controlling resolution. Yes, on the phone. So 10 says we analyze the image itself. Quality would be a high resolution image is of high quality. It's a large image. So the server in 10 figures out the quality, the size of the image. And in 11, the server is saying, okay, there's a control unit. I can control the resolution, the digital images in the telephone unit. So the server is communicating back to the telephone saying to send me a lower quality or a higher quality image. You can actually increase the size of the image at the time. And those were not conventional features. There's no evidence that they were conventional features. So what else do we have? We have storage, off-site storage. We have communication as to the resolution. What else? And I think it's the way to classify the images on the recording device itself. So as a patent explains that the user who is taking these images understands those images best, that person can allocate information to those images by typing something in through the keypad. You can say these images are from the beach or something like that. It's typed on the recording device, which is the phone, and then transmitted to the server. Classification information. Classification information on the recording device itself. Do we have anything else? Are those the three things? I think those are the three most important things. So you're not saying that the camera was an inventive concept here? The camera itself was not an inventive concept, but the combination in the claim, using the camera on the telephone along with classification information. What was new about using the camera with the phone? It was the ability to now offload images. You can use the telephone system itself, the transmission system on the telephone, to offload images. And that circumvented the telephone's limited memory capacity. But you didn't mention the camera phone as something that was inventive, and I think you've said repeatedly this morning that isn't what qualifies in Step 2 of ALICE. You mentioned three other things. Yes. I think it's one factor among the other claim elements. What do you mean one factor? I asked you for a list, and you didn't say that the camera phone was something that was inventive that qualified at the second step of ALICE. Well, I think that just incorporating a camera into a telephone itself would have meant that the telephone could only take a couple images before the memory was filled up. It really wouldn't have been, at the time, a viable device. It wasn't this invention. So the idea of transmitting these digital images wirelessly through the cell phone service or whatever is part of your claim. But that's part of the communications aspect. It's part of the communications aspect. But you're not claiming the wireless network, obviously. No, not at all. The claims are primarily directed to the improved telephone, a telephone that was not conventional before this invention was filed. I'm sorry, back to the telephone. How did you improve the telephone? You didn't improve the telephone. You didn't give it bigger memory. You didn't give it the capacity to send things wirelessly. You didn't improve the camera. You created a system that could offload these images. Yes. Offload the images in a specific way using classification information that can be recorded on the telephone. And the problem is that sending the images to an off-site server was something that was conventional before this patent was filed, right? I don't think that there's any evidence offloading images with classification information to a server. No, no. Leave out the classification information. Offloading images to a server was known and was common before the patent was filed. I'm not sure that that's correct. I do think that it was known to take a memory card from a camera, take that memory card, plug it into a computer, and then that would then... I don't think it was well-known or generic. And there's a citation to that that is lacking at the moment. It doesn't come to mind that that wasn't generic at the time. To transmit images to a server and the server would then classify those images. No, no. Even... Classification was not part of my question. Understood. What I'm trying to understand and what the patent itself says is what you're claiming is inventive here is the classification step. The classification aspect of it, right? That's one step, yes. But I don't... I'm unaware of a telephone or any transmission system that would just send images to a server. So if your patent was just a device for transmitting digital images to a server, do you think that's patent eligible? Assuming you're not claiming the device and you're not claiming the server. I don't... I honestly don't know the answer to that because the invention is much more than that. But that is definitely one aspect of the claim. The claims are very detailed. That's one aspect. And I think it's one unconventional feature of the claims among others. Could we turn to the indefiniteness issue? I'm not seeing where this structure is for means for allocating classification information. Sure. So here I think the district court's error was that the court found that the phone's keypad was not linked to the means for allocating classification information. But if we look at column six, line 45, the specification states with reference to an alternative embodiment that, quote, in terms of its function, the allocation means may be integrated into the keypad, for example, by using key combinations. So when the... That doesn't... That's not the structure for the means for allocating. It's just saying this is a way of entering the allocation information. Well, it ties into column three of line 27 where the specification also says the individual who records the image probably best understands the information which describes the image and can easily allocate that description to the image tab. So here again... So that's done by an individual? By an individual through a keypad, for example. By using a keypad, but the individual is performing the allocation step? Via the keypad of the phone, as described in column six, line 45. It's that the allocation means, in terms of its function, the function of the allocation means may be integrated into the keypad. So when the individual can classify his data, he's taking these images, he knows what the images are. He's typing in information through the keypad. So it's very similar, for example, if I'm at a laptop computer... What case says that a person is structure? No, it's a keypad. It's a keypad. So the person is the one who comes up with the allocation information, types it into the keypad. It could be anything. Well, the keypad doesn't do the allocation. Keypad, according to our expert declaration, it does. And it's, again, if I'm at a computer and I'm operating in Word, I'm typing in letters, my letters appear in the Word document. If I switch to a different mode, for example, an Excel spreadsheet, I type in, and those letters show up in my Excel spreadsheet. And it's no different on the telephone. So the telephone has two modes of operation. The specification says it can be in telephone mode or it can be in camera mode. So if I'm in telephone mode and I'm typing in, what I'm typing in is allocated to telephone. It's somebody's phone number. If I'm in camera mode and I'm typing something in through the keypad, it's allocated to those images, associated with the images. Okay. You're into your rebuttal time here. Yes, I am. We'll give you two minutes for rebuttal. Thank you. Thank you, Mr. Wood. Mr. Limelight. May it please the Court. Your Honor, I was pleased, I think, to hear Learning Council say that the claim here is not that they have invented a camera phone. That's something that they have danced around a little bit on this appeal. I understood, Counsel, to say three or maybe four things that they thought were inventive. The invention here is directed to a classification system for photos. I suppose that idea is the idea of classifying photos on the server. That classification is selected by people, not by the computer itself, as the Claim 17 makes clear. Notably, the claims aren't limited to any particular means of classification, any particular algorithm for classification. They encompass any possible classification scheme, date, order taken, subject matter tags, anything. Can I redirect you a little bit? I don't find the classification stuff particularly eligible either. Okay. But it does seem to me that if the idea of you have a camera phone and because it can't store a lot of stuff and you can't run to your computer in between, you know, storing two or three pictures, the notion of being able to wirelessly transmit them without plugging it in, if you were the first person to think of it, may have been patent eligible. I think, Your Honor, I think that might well be true. We don't need to worry about it here because it's absolutely clear that that is not the invention. Okay. Why is that clear? Well, so it's clear from column one of the patent in the background section of the invention where the patentee tells us so-called cellular telephones may be used for image transmission as is known, for example, from U.S. Patent 989, entitled Method and System for Enhanced Data Transmission in a Cellular Telephone System. Digital image cameras immediately before that, they say, are already known in the prior art. The invention here is not the idea of transmitting photos over the Internet. The patent quite forthrightly admits that that's well known. If there is an invention here, and we do not think there is, it is in the classification system. I think what Judge Hughes was asking about is whether it was known to transmit the images for storage to a server that was not part of the phone. Well, Your Honor, I think the answer is the images are being transmitted to somewhere. And in the background section of the invention, we know you can transmit images from a cellular phone. We know that digital image cameras are already available. Video conferencing systems are used to transmit spoken data. Television camera and a telephone which provides for audio data and image data to be transmitted in common through a telephone line are known. Compression is known. So the only thing that is not specifically listed there is a server. Now, I can imagine, again, that a patentee might have invented a specific server designed or optimized to achieve this. But this server is not that server. To the contrary, TLI before the PTAB proposed and got adopted a definition of server in this claim as, quote, a computer or system of computers that makes resources available to other computers, unquote. That is an utterly generic server. And the server functions defined in Claim 17 are precisely the functions that any server performs. We're receiving data. We're extracting. I guess what you're saying is that it was known to store digital images on servers. Yes, Your Honor. And I think this court has twice made clear that these performed functions of a server are well-known and not sufficient to overcome Alice. In the content extraction case, this court said that data collection, recognition, and storage is undisputedly well-known and abstract. And in the cyber phone case, admittedly unpublished, I think even more closely on point, this court said the well-known concept of categorical data storage, the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patentee. Well, let me ask you that the Alice Step 2 of Alice Mayo requires that we look to see if there's an inventive concept, correct? And in the Deere case, the court said that novelty is not relevant in determining whether subject matter is patentable under 101. What is the line between, in other words, that seems to say that you can have an inventive concept for purposes of our 101 analysis without having something that is necessary, not anticipated, or non-obvious. What's the line there? It's an excellent question. And I think part of the problem is that the Supreme Court's cases since Deere have moved in a somewhat different direction. As this court said just last year, we need to read Deere through the lens of Alice and Mayo and Bilski and all of these other cases. When you read what those cases say Deere was doing, those cases say Deere was actually limited to a circumstance in which there was actually a new physical hardware element attached here. When you go back and read Deere, I think one can reasonably question whether that's actually true. But it is certainly how the Supreme Court seems to view Deere today. And it's how this court says we need to read Deere in light of Alice. What you would be saying is you're saying where the law now is, based on the Supreme Court post-Deere and our court, is that if something that is in the patent is obvious or anticipated, it's not an inventive concept. I think that's right, Your Honor. That can't be right. That's not what the Supreme Court is telling us, is it? It seems to me that what you're dealing with, anticipation and obviousness, you may be dealing with a single reference or two references, whereas the theory of Alice is that something was well-known, a well-known concept, which isn't shown by finding a single reference. So I think that's a fair amendment, Your Honor. And I guess I would also say that there may be circumstances in which a particular combination of well-known technology could itself be an inventive concept. You said earlier, I think, Mr. Lemme, that the concept of a digital camera was in the prior art that's referenced. Yes, Your Honor. And what is that? Is that the 989 patent? Well, no, Your Honor. The patent, TLI's own patent, says this quite clearly twice. First, on column one, lines 27 to 28, digital image cameras are currently available on the market, as known, for example, from the publication of a particular discussion of a camera. And again, on column six, lines one and two, the digital image pickup unit, which is what they're claiming they've put into the telephone, operates as a digital photo camera of the type which is known. Now, that's not just a statement. But where do we have a telephone with a camera in it? Well, Your Honor, we have an arrangement with a television camera and a telephone, which provides for audio data and image data to be transmitted in common through a telephone line, is known, says the patent. Again, this is column one, lines 35 to 42. And they cite a patent, the 587 patent, entitled Transmission System for Still Picture TV Telephone. Now, I think what's notable here is the patent doesn't claim that it is inventing a camera phone. When you begin with the summary of the invention, what the patent says is, the present invention addresses the problem of communicating and administering digital images by providing for recording, administration, and archiving of digital images simply, fast, and in such a way that the information, therefore, may be easily tracked. But the camera phone, at least according to Mr. Whitman, does seem to be an important part of the way the alleged invention works. Well, Your Honor, I think – It's an important component of it. Maybe, although I think one of the difficulties that TLI has here is that TLI's argument in the district court was not, we invented a camera phone. Their argument in the district court was, we invented a classification system. They forthrightly say on page seven of their brief, we didn't invent a camera phone. Camera phones weren't invented until 2000. Their own inventor's declaration says, well, I came up with this idea. And then after I came up with this idea, Siemens launched on a project to try to develop a camera phone. None of that suggests that he invented the camera phone. And I think even if they were to try to make that argument now, it was waived in the district court where they took exactly the opposite tack. And even today in oral argument, I did not understand learned counsel to be saying that they invented a camera phone. Now, when it comes back to Alice, I think the – But let me ask you this. If the camera phone is an important part of the operation of the system and it wasn't in the prior art at the time, would it be, even if they're not claiming it, an inventive concept? Well, so the camera phone itself, I think, could not be the inventive concept under Alice for the simple reason that it is not the idea. It is not the thing they invented at all. So the question I think – You're also saying, are they not, that's what I thought I heard this morning, is that attaching a digital camera to a phone would come within the claims. Yes, Your Honor. Which is not asserted to be an inventive step. I think that's right, Your Honor. And the specification bears that out. So at the bottom of column 5, line 62, as an alternative to an integrated unit, they may be spatially separated from the – digital image pickup unit may be spatially separated from the telephone unit, but connected to one another via a connection such as a line connection, a plug-type connection, or a radio link. Nor was this patent directed to cell phones. In fact, the technology – the patent specifically talked about telephone unit being operated via a telephone line or may alternatively be operated wirelessly as a mobile telephone. So anything, anything that communicates information, connected in some way to an image processing unit that receives images, is sufficient to fit within the scope of the claims. I think there was no – I think it was evident from the patent itself that that wasn't what the patentee, what the inventor thought they were inventing. They described those as all elements in the background prior art. What the inventor thought they were inventing was a classification system. But that classification system, as claimed, isn't a specific new algorithm, a specific new way of classifying images. It's any classification whatsoever. Can I tell you what troubles me about this case? Because I think – I get your argument, but it seems to me you're asking us to take Alice and our line of cases one step further. And by that I mean a lot of those cases are you have some kind of abstract idea or a business method and you say do it on a computer. And we routinely found those to be 101 ineligible. And so you have that in part here, but then you're adding in a phone. And that seems to make it different. And what worries me is that if a phone can be added in and still make it ineligible, can a car be added in? Can all kinds of very tangible products? And then how do we divide what's a system, which we have to look at as a whole, from an abstract idea? Understood. I think this is a significant problem this court confronts you on, but I honestly do not think it is a problem in this case. Because the technology here is, in fact, expressly designed to be generic. It is expressly listed as identified in the prior art as stuff we already knew. And because there is no discussion whatsoever in the patent of how one would design this. We thought that this was a new idea. We've put a camera into a phone. No one's ever done this before. Where's the technology that shows us how it's possible, which we've never done before? No discussion of that in the patent. So I believe, Your Honor, that it will be at some point that technology, either because it is itself new or because the combination is new, is something that can be an inventive concept added to an abstract idea. But isn't what you're saying is that if a generic computer doesn't count, a generic phone also doesn't count, or a generic anything? I think that's right, Your Honor. And this court has made that clear by applying this Alice rule not only to a generic computer, but to a patent that required a generic computer plus a scanner, separate physical hardware technology that were integrated together. Nonetheless, the court said the scanner was well-known, the computer was well-known. That's not anything new. I'd like to briefly just say a bit about claims 10 and 11 because they were raised in the oral argument. So the first thing to note here, I think, is that TLI has arguably waived the argument that they should be treated differently. They did not brief it at all in the district court. It came up for the first time at oral argument in the district court. The district court nonetheless considered the issue, but it was not raised or briefed below. But in any event, I don't think you need to worry about claims 10 and 11. It is true that they say things about controlling an image analysis unit for determining quality, a control unit for controlling resolution, but that's all they say. And TLI's own expert admitted that these things were in the prior art. TLI's expert on A2509-10 admits that, quote, image analyzers and image processing were terms and devices well-known to a person of ordinary skill in the art. Similarly, on A2505-06, it was well-known in the art to compress, encrypt, or scale digital content. So the idea that somehow these claims have fit in the responding to memory limitations, things that are otherwise not mentioned in the claims, I think is belied by TLI's own expert who says all that's well-known. Finally, I would note that claims 10 and 11 are dependent on claim one, the server claim, so they are subject to the indefiniteness analysis, even were this court not to find them invalid under Alice. They still run into the same problem, which is that it is software, not a physical keypad, that is performing allocation in the computer system, and they never tell you what that software is. Okay. Thank you, Mr. Whitman. Mr. Whitman, you've got two minutes. Thank you, Your Honor. May it please the Court? First, I'd like to go back to the claim. Just one question related to what we were discussing with Mr. Laemmle. A generic computer doesn't render it patent eligible. A lot of cases have said that. We've said a generic scanner doesn't render it patent eligible. Why shouldn't the same thing be true of a generic phone or a generic digital camera? Because here it is not a generic phone. So in cyber phone and in contract… Let's assume we conclude that it is. Then I think you may be correct there. But we strenuously disagree with that because the issue isn't whether we invented the camera phone here. Really the issue is whether the camera phone was conventional. There is not a single reference anywhere in the record that a camera phone existed or was conventional in 1996. Every reference in the background of the patent, of the 295 patent itself, talks about telephones that could transmit data, video conferencing systems, but those are not camera phones. There's no reference to a camera phone. It was not conventional. It was not. There's absolutely no citation anywhere that such a thing was conventional. In fact, in the cyber phone case, there's a mention, and I think the appellant there tried to argue, but our phone is not conventional. It has these data obtaining parameters and things that make it not conventional, and this court mentioned that's not claimed. The elements of the phone claimed in cyber phone was just a traditional telephone, but that's not what's happening here. The telephone is far from conventional. I'd also like to correct the record a bit. All the claims do require that the telephone unit include an integrated digital pickup unit into it, so as Mr. Lumley stated, that a spatially separated camera and phone might satisfy the claims. I would disagree with that. The claims are more narrow than that. Well, under that part of the specification, it sounds as though integrated means not spatially separated. I think that that part of the specification says it can be integrated or it can be spatially separated, and the claims refer to integration. Right, so integrated means not spatially separated. Yes. Okay, thank you, Mr. Whitman. Thank you.